Defendant Riley filed a motion to suppress evidence in partial arrest in the trial court. In our appeal, he contends that what he meant to file was a motion in vain. He asked this court to retitle it by intermediation. The problem goes beyond what title the defendant gave it because the substance of the pleading does not meet the threshold question of whether evidence should have been suppressed in this case. The title of the defendant's pleading makes it plain that he sought to suppress evidence and partial arrest. This must be what he intended to file because there really is no creature called a motion in limine and to partial arrest. A motion in limine is used to protect the moving party from the prejudicial impact of inadmissible evidence. A motion to suppress, on the other hand, concerns whether there has been an illegal search or seizure. Does it really matter what it's called? In many cases, it does not, Your Honor. However, in this case, the fact that the defendant wants this court to retitle it strongly suggests that it was improper for the trial court to grant it. Shouldn't we, I mean, the remedy that was requested was to exclude evidence. I mean, shouldn't we look at the substance of it and ignore the caption? I believe the requested remedy. In fact, I think one of your co-counsel argued that or stated that in her brief that the caption really doesn't matter citing cases. Well, the remedy that was requested in this case was to exclude evidence. The exclusion of the evidence included not only the secondary area where, of course, we all know there's been an individualized suspicion noted by the officer, but it also excluded everything that led to the officer having the individualized suspicion. So the officer was not even allowed to testify about the smell of alcohol in the breath, bloodshot eyes, or anything else that might have led to individualized suspicion. The remedy that the trial court imposed by excluding all of that evidence, not only videotape, but the officer testimony concerning what might have been caught on the videotape is really an unauthorized remedy. It's contrary to law, and under the required de novo review, this court assesses the ultimate question of whether a motion to suppress should have been granted. Here, there was no illegal search or seizure. None has been alleged, and the trial court was wrong to have suppressed all of the evidence. If the defendant in this case really believes that the state violated discovery, and they're pleading to address that, is a motion to compel discovery. How do you compel something that doesn't exist? Well, that's a good question. But under a motion to suppress, it has to be a level of a Fourth Amendment violation. The fact that in this case the video recording was running, but it didn't capture the defendant performing the field sobriety test, that doesn't rise to the level of a Fourth Amendment violation. Why doesn't the situation reflect a discovery sanction as opposed to a suppression? That's a good question, Your Honor. If this court finds that a discovery sanction was warranted, the reviewing courts normally say that that is highly scrutinized on appeal, and it should be narrowly tailored to fit the specific instance. Here there wasn't any narrow tailoring. It was a knee-jerk reaction by the trial court to say all of that evidence is out, and really left the state with no part of the case left to be able to prosecute. So the intended effect or the intended outcome is suppression of all the evidence. That's why the defendant titled it the way he did, and that's what the trial court wound up doing. Well, we're not bound by the title of the motion. I mean, we look at the substance. If the court in its discretion determines that a sanction is required, that's a discretionary act both in civil and criminal for the trial judge to determine, isn't it? Well, a sanction in this case would pertain to discovery, not to completely suppressing the evidence because that requires the level of a Fourth Amendment, an illegal search or seizure. We don't have that here. It's not alleged here. What's alleged here is a simple discovery violation, and the co-counsel will be arguing whether or not that's even warranted in this case, whether the statute is mandatory or permissive. And in this case, what occurred was all the evidence got suppressed. The trial court impermissibly granted the motion to dismiss. The title does seem to matter because counsel on appeal is asking this court to retitle it by interlineation. So the inference to that is the defense believes it doesn't matter. Thank you, Your Honor. Thank you, counsel. Counsel? Good afternoon, Your Honor. As many of these are court and counsel. This is an appeal by the state from an order of the circuit court in three separate cases, which are consolidated for purposes of argument and decision, all of which carry a similar theme of purported error, and, therefore, the case law and the analysis are substantially the same. There are some small factual distinctions, which I'll get to, of course, here in a moment. But what all three cases involve are a motion by the defendant to exclude evidence on the basis of a violation of a provision of the Illinois State Police Act, which would be 20 ILCS 22610-30. It's a fairly substantial provision, which requires pertinent to this appeal, that squad cars be equipped with audio and video electronic recording devices, and that also that they are to be activated in certain enumerated situations, one of those what they call enforcement areas. One of those would be applicable to all three cases here, which would be a roadside safety check. All three DUIs generated from evidence that was obtained when a vehicle would enter what they call an initial area, and that's where the police would detect certain indicia of intoxication, perhaps odor of alcohol or an illicit speech. There is a secondary area, and it's there when a full range of investigation occurs with regards to, like, say, the field sobriety test and et cetera. In all three cases, the court agreed with the defendant that the proper remedy was suppression or exclusion of all the evidence. Evidence that was in the initial area, evidence that was obtained from the secondary area. Now, I've styled this, and I've come to you because it's a violation or a purported violation or an allegation of a violation of Section 22610-30. However, when it got to the court, it wasn't styled as a violation of the statutory provision. It was styled as a violation of the discovery laws and the discovery rules. The defendant relied upon principally a case called Beeple v. Kladdis. Other cases cited, I believe only in the Sexton case, which is the one that I brief, were Katsakis, Johns, and Petty. The common thread of all four of those cases is that the state had in its possession evidence which allowed to be destroyed. In Kladdis in particular, the defendant made a specific request for the preservation of a piece of evidence, a videotape, generated under the statute, which it then allowed to, after receiving those, it allowed the tape to be destroyed or taped over. The court, the prosecutor, you know, pushed back on that and said, well, this is not a discovery violation because we don't have a recording. We never got a recording. The recording wasn't made. Or in a couple of cases a little bit different here, in the Sexton case, there was never a recording made. In the other two cases, there's a recording, but they didn't capture the enforcement. So they functioned the same in essence. And I take it the reason for that is that all activities took place outside the field of vision of the recording. That's correct. And from my understanding, there's no evidence that was actually presented. It was all in pleadings. But essentially the common thread in all three is that the statute requires recording of the events of the enforcement area. None was made. Either the role was unrecorded or it just never started in the first place. Let me ask a question about the, I guess it's Sexton, where no recording was made. Did the state offer any reasoning for why? I mean, did it not? Was the recording equipment not functioning? The statute does provide for that sort of thing. It does. I mean, there was nothing presented to that effect. It just wasn't, for all we know, it just wasn't turned on. Right. And we sort of proceeded forward with that and it was, for some reason or another, it was not done. Obviously, a recording started and not done right suggests more of an inadvertence or a negligence as opposed to not starting it at all. But in the end, it comes down to the issue of what happens if the statute is not complied with and we don't have a recording of the enforcement area. Now, the court ultimately followed along with this particular analysis and indicated that, well, since there was a recording that needed to be recorded under the statute and it wasn't done, it wasn't done properly, and that constitutes discoverable material, if it had been done, then that would be a discovery violation. And then the court then essentially followed, well, not only followed Atlantis' sort of idea of sanction, it actually took it sort of a step further because, of course, sanction wasn't even really tied to that which the recording would have preserved, but it knocked down everything in this case. And so our position is going to be ultimately that no sanction is warranted under this case, at least as this case currently stands right now. Now, discovery rules, which really come from Rule 412, require that the state, in fact, the specific language is that the state is directed to disclose material that's within the state's possession or control. So as a matter of logic and as a matter of obviousness, let's say class, if a tape is generated, it's required to be preserved. It's required to be turned over. The tape was never made in this case, and so it sort of raises a kind of philosophical debate, can you disclose something that which does not ever exist? The answer to that is, of course, no. Now, I'm not saying that the fact that the statute is not complied with doesn't perhaps lead to something else later on. What we need to understand is the proper legal framework and context in which this is to be determined. It's not a discovery violation because the state never had it and therefore can't disclose it. And if it can't disclose it, then obviously there can't be a violation under those particular rationale. Now, that then leads to the next question is, well, what do we do? And what is the proper legal framework? It's a statutory violation case. And statutory violation cases are very much different than discovery violation cases. And one reason for that is, as case law has developed under discovery law and violations of 412, is they're essentially prejudice free. If the state's required to disclose something it has and it doesn't do so, then that establishes under Rule 415 the power of a circuit court to impose a remedy for noncompliance. If, however, this is not a discovery case and it's a statutory violation, then that's a little bit different and that requires a different set of analysis. That analysis begins with the statute itself. 2610, I keep saying 216-30. 2610-30, as I said, is a statute which outlines a lot of really procedural directives from the legislature to the Illinois State Police and to the Illinois State Police only about what they have to do with regards to equipment, preservation, recording. It also allows for, I think, relevantly here, that the SWAT cars that have nonfunctioning can nonetheless still be used if it's deemed in the public interest to do so. There are provisions which allow for them to still be put into use and there are provisions that still ought to be used in enforcement areas even though the recording is not going to be made. What's not in the statute is an enforcement provision. There's nothing in it which says if you don't comply with this, this is what happens. Now, that's a very important factor. I think it might be helpful to look at a contrasting statute to see the difference. We point to what should be the 725 ILCS 5-103-2.1. This is one we see a lot in noncriminal cases, and that is the mandatory electronic recording of a murder suspect. This is in the criminal code. It's directed towards all police agencies. And importantly, although it sets out the provisions of what the state must do when it interrogates a murder suspect, it also says that if you don't comply with the statute, then the confession or whatever is in court is deemed to be presumptively inadmissible. There's a penalty provision built right into it. Now, that presumption can be defeated by the state in certain circumstances, but the fact of the matter is that if you don't do this, this is what happens, and this is the penalty. So what has developed over time is what we call the dichotomy of the mandatory versus the directory statute. The principal difference between the mandatory and the directory statute really comes right down to that. Is there within that statute an enforcement provision? If a statute does not have an enforcement provision, then it's deemed that there's a legislative intent that there not be an automatic penalty built into noncompliance with the statute. Again, you contrast that with the recording of murder confessions where the legislature did do so. So, you know, when we look at statutes in terms of statutory interpretation and legislative intent, we have one statute where the legislature did put that in there, and we have a statute here where the legislature did not. The defendant's cited in their reply brief, and I commend them for that, the case that came out after the filing of at least one or two of our state's briefs, and that was people versus Borey's. And Borey's goes into, I think, a very helpful and very correct analysis of this statute and whether it's mandatory or directory. Are you arguing that since there's not a, and what you want us to focus on is the basis for deciding this, since there's not a mandatory penalty that default, there is no discretionary penalty that the court can impose? Let me modify that slightly. Okay. There is discretion, but the discretion is not something that's contingent upon the court penalizing the state. It's contingent upon the defendant establishing that the violation of the noncompliance of the statute prejudices the defendant in some way. Okay. I'll accept that modification. Okay. And that's, and I think if you look at a case called Eagle versus Wachholz, which is cited in the state's briefs, that's really sort of, they talk about a different provision, which requires the recording and preservation of audio within the car when there's an interaction between a police officer and an individual. And the court in Wachholz said, well, this is a directory statute. And then it said that suppression wasn't warranted. And the reason for that is because the defendant didn't identify any aspect of prejudice that was suffered as a result of that. And I think that that's the good and proper legal framework for this court. And so I want to emphasize that. Now, I'm not saying that the court has no power to impose a penalty for noncompliance, but the power derives from what the defendant suffers and not from penalizing the state. Because really to do so, to penalize the state automatically would be to do what the legislature deemed. Well, that approach covers both statutory and discovery violations, doesn't it? No. And the reason for that is, well, let's talk a little bit about discovery violations because there's really kind of two species of discovery. There are. There's the due process. And the penalty, it can be imposed both in civil and criminal as far as that's concerned. Absolutely. But it's also possible for a court, a trial court to fashion an order that is a remedy as opposed to a penalty. Is that correct? That's correct. That's correct. But when we talk about remedy, remedy still ties into what it is that the defendant has been denied as a result of the noncompliance of the statute. The defendants have taken a position in this appeal, and really for the outset of this case, this is strictly a discovery violation case. And by doing so, it's not a bad tactical maneuver if it's persuasive because it doesn't really require them to actually establish a sort of level of prejudice as a result of it. Well, in Cladis, there was no requirement of prejudice. Right? I mean, and I think in their brief, the defendant's quotes, we reject the state's argument that because there is a finding of no bad faith, the defendant is required to show the videotape as material exculpatory evidence. Well, okay. And it gets back to my two species of discovery violations. There's the due process, and then there's the 412 violation. Due process, and that comes from Arizona v. Youngblood, an obvious destruction case. They were required to show they have faith in the power of the state in the destruction of evidence. That's sort of where that's the genesis, I think, of where that analysis comes from. The case has also discussed Rule 412 violation. And the court has, under Rule 415, specific authorization under the Supreme Court rule to fashion any remedy that sees fit, which is inclusive of a remedy, which would tailor or require the exclusion of a particular piece of evidence. As far as what is a discovery violation and what's not, I mean, there's a fine line here. Because Cladis, okay, a tape was made. For some reason, it was erased or destroyed. Okay, we could assume that it was destroyed on purpose. Maybe the police didn't like what was on it. There's not a whole lot of difference between that and saying, I don't like what's going to be on it, so I won't turn it off. Well, and I understand the results the same for the case, because the defendant doesn't have it either way. And then why would he have to show prejudice in one and not in the other? I would point out, though, that in that latter situation that you point out, it sort of ties into what I've said before, that the statutory violation doesn't immunize the state from a penalty or a sanction, but it's a different sort of construct of legal analysis that goes along with it. The discovery violation cases, they have their own species of cases, because in that case the state has evidence, okay, that it's required to honor the rules and required to honor the process to disclose to the other side. Now, the hypothetical that you talk about is essentially a willful act on the part of the state to deprive the generation above us probably with the intent that the other side might see it. And how would the defendant ever prove that they did it on purpose? There's no way they'd ever prove they did it on purpose. And my point is this. I mean, you say, how can we disclose something that was never created? It's not created because the state police failed to fulfill their statutory duty to create it. I mean, it's just a fine line between creating it and throwing it away or just not creating it. And so how do we? Well, if there are any allegations in this case, perhaps we'd have a different analysis. That's what we're after. This is being treated as strictly a discovery violation that the non-generation of this is, if so factible, a violation of discovery under the auspices of that, that its creation would ultimately be turned into a piece of discovery. There's a lot of it we could get to. But we would ask this court on behalf of all three defendants that the judgment of the circuit court be reversed and for reasons of the brief remain that and all sanctions be vacated. Thank you. Thank you, counsel. Counsel? May it please the court, the closing panel, the court waiting for the current hearing. Counsel Solomon. Before the defendants, if I could just speak up a little bit, please. It's our position that when you apply the statute, the Illinois State Police Act, in a practical manner, and when you take that into consideration with the rules of discovery in the criminal cases, it's obvious to see how they flow together. And that's why when we breached the issue and made the argument in the trial court, we've taken those together and put and framed that as the issue. We believe that the Illinois State Police Act is obviously mandatory. The plain language of the act is mandatory. When you look at the language of the legislature and the legislative history we set within our briefs, it's mandatory. The Supreme Court's interpretation of the Illinois State Police Act in class, there's no denying that they interpreted it as mandatory. In class, there was actually an order entered for the state to preserve the tape. Right. And the state violated that order that was entered in that case. Right. And so it's certainly a different situation than we have in any of these three cases in that regard. Right. Now, getting past a little hump here, the Supreme Court rules on discovery only apply to felony cases. Correct. These are all misdemeanor cases. Correct. Okay. So how do we get into the Supreme Court rules and what they say about discovery in these cases to begin with? Well, I believe you also have to look at how the Supreme Court applied those rules to the misdemeanor DUIs and therefore extended the production of videotapes in misdemeanor DUIs. Well, you're talking about in class in particular. Yes. But, I mean, we go back to what I just asked you. I mean, there was a discovery order entered in that case that said preserve the tape. Well, even in misdemeanor DUI cases, this court still has the ability to impose sanctions at its discretion. Well, they could enter an order to produce a tape. Right. But, I mean, there's only certain discovery you're entitled to in a misdemeanor, and there are certain things which have come through U.S. Supreme Court decisions and so forth, and technically this doesn't fall under that. I mean, because you're arguing that you don't even have to show that it's exculpatory. Well, you've got to remember when the Ohio Supreme Court decided, I believe it did decide that the videotapes were to be turned over in discovery in misdemeanor DUI cases. Am I not understanding the question? I understand what you're saying, but, I mean, it's just a different animal because they're reviewing what the circuit court did in that case as a result of a violation of an order to produce discovery in a misdemeanor case. I mean, there's no doubt here the court could have ordered, you know, that that be produced, and if you'd have requested it, the state would have to produce it in discovery. But they didn't have anything to produce. You see what I mean? So that's okay. I'm just trying to get past that initial hump. I mean, I don't think anybody here is taking the position that if there was a tape, it would have had to been produced. I don't think anybody's arguing with that. Right. I think there are some cases that say, you know, necessarily you don't have to have an order to have discovery produced. Formal discovery doesn't even have to be produced. I think there's a lot of ineffective assistance to counsel cases that say that. If there's a custom procedure of the county in which you're in, then as long as the discovery is turned over, then that's sufficient to satisfy that. So I don't think in the misdemeanor discovery case, I don't know that you technically need to have an order for there to be a sanction imposed, especially in this case when there's the State Police Act that mandates that something be done that's not done, and therefore it can't even be turned over in discovery. I mean, you will agree with me, won't you, that what your argument in this case takes CLADIS a step further. It's not only do you have to preserve it if there is a tape, but you have to make a tape. That's a step further. Absolutely, Your Honor. Yeah, okay. Because I think if you don't have to make it, then why does it matter that it was destroyed? Well, that's your argument, I think. I think it's a good argument because either way, the defendant never gets it. So by finding that it's discretionary and that the state police don't have to do it, then I think that that takes the entire Supreme Court case and says, well, the Illinois State Police don't have to do that. They don't have to make the tape, so they don't ever have to worry about destroying the tape. And that way the defendant never gets their hands on it. A discretionary reading and saying that it's not mandatory, they don't have to turn it over, it places all that power in the state police's hands. They don't have to follow the statute. They don't have to do it. So basically the only operative section of the state police area would be subparagraph C-3, which says an officer may begin recording an officer reasonably believes recording may assist with prosecution, enhance safety, or for any other lawful purpose and shall continue until the reason for recording ceases to exist. Why is that not just the statute? So is there anything in the record that sheds any light on why these recordings were not made? I mean, was it just inadvertent, they didn't realize? I don't believe it's in the record. I know what was told to me by the state's attorney's office, but I don't believe that's in the record. Okay. I think that in the Powers case, I believe the state responded that they had found the tape, but the state police made the unilateral decision and didn't have any relevant information on it, so they never turned it over. We never got to see the tape, so I don't know. Was there any further requests for it? No. Because I want to see it for myself. Right. Because at that point in time, the wheels were already turning with the motion, and then the judge ordered that. The Riley case, we can't really explain that. It's just they did all the physicality tests outside of you. And there was audio on that one? Yes, Your Honor. I don't believe the state offered any explanation as to why that occurred how it did, and I don't believe the state offered any explanation as to why in Sexton no video tape was ever made. On the record, to me, neither. The one thing that I do think, since we're on class, I think it's very important. After the Supreme Court decided class, the legislature never went and amended the statute. The Supreme Court interpreted this act as being mandatory. They used a very strong language in that decision. How important it was, how it's objective evidence, how it assists the truth seeker, how the legislature has found that videotapes are important to the criminal justice system as a whole. After they settled this, they didn't amend the statute. If the legislature didn't agree with that interpretation, it could have easily gone in there, amended it, and say, no, this is policy only, this isn't designed to have any impact on criminal cases or discovery. But they didn't do it. And I think that's a very important indicator as to how the legislature felt about this statute, how it plays with discovery, how it plays with the criminal trial process. The one thing that the state hits upon is that they can't turn over something that was never produced. And I think that that's not an accurate statement of what's occurring. The evidence is being produced. It's not being preserved. The arrest is still going on. The officer is still going to testify. He's still going to run him through the gamut of the field sobriety test. The evidence is there. He's just not preserving it. And I think failure to preserve the evidence and produce it is what draws it in line with the discovery process. One thing I want to discuss about the Borey's case. That state's correct. It did come out about four days after they filed the brief. We addressed it in our group. We think it's distinguishable for a few different reasons. First one, that defendant did not raise the issue of trial. The trial court never had the opportunity to decide that issue. They raised it on appeal under the arguments of both ineffective assistance of counsel, the failure to raise it, and under the plain error. That's not what has occurred in this case, so it's being analyzed in a different manner. To my knowledge, I believe the Supreme Court denied cert on that case, so they decided not to review it. Now, the holdings in Borey's were that although the arresting officer's vehicle failed to have recording equipment, the admission of the testimony was not plain error. That was one holding. The second holding was that any error in admitting the results of the horizontal gaze-by-stagnance test without a proper foundation was harmless, and then the appellate court vacated a DNA feed. So none of their holdings addressed this issue. It was all dicta, in my opinion. And also in Borey's, the state police officer did comply with the provisions of subparagraph H of the State Police Act, which is the exception that provides if the cameras are not functioning or if there's a defect or something. They report it to the commander, the commander notes it, and then they go through that procedure. So that's what occurred in Borey's. That didn't occur in this case. The state is also referred to the case of Wachholz. Wachholz dealt with the eavesdropping statute. We don't think that that's persuasive either because that was also decided under a due process standard. And in that case, the defendant was actually charged with possession of a controlled substance. The state police officer reported the initial stop, the search of the vehicle. But then less than 90 days later, the DVD was recycled. The court also found that that DVD was not relevant to the issue of whether the defendant committed the offense of possession of a controlled substance, which we believe that this DVD is essential to the issue of whether or not the defendant was driving under the influence of alcohol. So we think that Wachholz is also distinguishable on that basis. The state's also cited to the statute of the criminal code regarding the confessions or interrogations of defendants of murder cases, homicide cases. They say that that statute has an automatic penalty. But if you really read it, it's not necessarily an automatic penalty. It's presumed inadmissible. It doesn't say it isn't admissible. It's presumed inadmissible. And then there's a procedure where the state can have that ordered to be admissible. So there's no automatic penalty in that statute. Going to the title, and I think this is kind of a red herring, the defendant admitted that it was a proper title. There were motion to suppress. There should have been a motion to limit. There's no doubt about it. We've never alleged due process violation. But I think the state incorrectly argued that the title was important because the relief granted was based upon that title. And I don't believe that to be the case. I believe the relief granted was based upon what would have been recorded, and I believe that the trial court succinctly said that in the order. The officer is precluded from testifying on what would have been recorded at the enforcement stop. Nothing that occurred before, nothing that occurred after. And therefore, it's also our argument that that remedy is appropriate in this case, these cases. It's the exact same remedy that was ordered in Cladis, what would have been recorded. It does not prevent the police officer from testifying as to what would have occurred before or what would have occurred after. What would have occurred going back to the Massachusetts County Sheriff's Department, what would have occurred during the booking process, how the defendant smelled, what his eyes color were, whether he was slurring his speech. None of that would have been precluded from being entered into evidence. It's just what would have occurred at the enforcement stop. That's narrowly tailored, because that's what would have been recorded had the police complied with the Enormous Police Act. I take it in each of these cases, the defendant was taken somewhere, has to take a breathalyzer test, either refused or took a breathalyzer test. In Powers and Riley, they were transported back to the Massachusetts County Sheriff's Department, which is approximately a five-minute drive. Now, I believe in Sexton, based upon the officer's report, they had the actual breathalyzer machine on site. She refused there and was posted upon it was released, so she was not transported. Well, I guess my question is, whether or not they took the breathalyzer, the results of the breathalyzer, if they took one, that was not excluded. Did I understand the order correctly? That was not excluded. Okay. Only what would have been recorded at the roadside safety checks, which is the definition of the enforcement stop. I know that. And I think the state argued this, too. It's because we, or they said we were part of it, but because we believe this is the natural flow of discovery, we don't believe there's any prejudice required. First of all, because I think our circumstance is that it would be impossible for a defendant to prove prejudice. What was on the video, we don't know. Whether the state police conducted the field sobriety tests in a proper manner, we can't determine that. There's so much that we can't determine because there's no video. I think the most important thing that I take away from this case is that we've got the technology. We've made tremendous advances in cameras. You can slow down a bullet to where you can see a shoot turn out. If there's a camera near on the center field wall, you can slow it down and see a spin on the curveball. We can send cameras to the moon and to Mariana Trench, but for some reason, we can't get them in police cars to view enforcement stops. And I'm not trying to be flippant, but I just relate this to what I know. I know Major League Baseball still needs to replant on the NFL, NBA, and NHL. They all have procedures for this, and that's a game. Those are games. And this is a scenario where people's liberties are at stake. They've got the technology. They've got the funding. They've built a dollar surcharge in this. Why can't we have these required-to-be-in-state-police-treatment procedures? And required to be turned over, preserved for 90 days, and then turned over to defendants in discovery? To me, it's simple and easy, and it's very frustrating, but for those reasons, I just think that the circuit court's order should be affirmed. I believe the evidence should be excluded. Thank you. Thank you, Counsel. Counsel? Thank you. Jennifer Camden for the people. First, the defendant says that the order suppressed only what would have been shown at the enforcement stop, the enforcement stop being defined as that secondary screening area. However, the suppression orders also would have suppressed any testimony regarding anything that happened in the initial enforcement area, the initial screening area, which was an area that the statute didn't require be videotaped. Also, with regard to Bores, the defendant says that it's distinguishable because there the court found that the trooper didn't violate Section 30, but the issue in both cases was whether the statute was a directory or mandatory, and Bores is an appellate court ruling on that issue. Bores doesn't support the defendant's position that a discovery violation occurred. In fact, the court noted that there was no discovery violation in holding that the defendant wasn't denied a fair trial in its plain error analysis. Also, Bores distinguished Claddis because Bores didn't involve the destruction of evidence. It's that dichotomy between the destruction of evidence that was created versus the failure to create that evidence. Now, the defendant argues that because the state was required to create this video and the video would be discoverable, the failure to create a video must be a discovery violation. Let me preface that by saying that in Paragraph 29 of Claddis does state that the video recordings are discoverable in misdemeanor DUI cases. That goes to your question, Your Honor. But whether a discovery violation has occurred and whether a statute is mandatory directory are separate issues. It's a discovery violation where the state fails to produce what it has, and the circuit court or any reviewing court can't create a remedy where the legislature didn't. And this goes to the defendant's argument that these videotapes should be created. Well, of course they should be by the state police. And that's why the legislature enacted this directory statute. But the legislature also could have provided a remedy. Yeah, let me ask a question. Are you saying then there's no remedy for the court in this kind of situation? If the state police just never turn on the video, there's no remedy? Well, Your Honor, there's no automatic remedy. Okay, then what is the unautomatic remedy? Well, where a directory statute has been violated. And, again, it is a directory statute, not a discretionary statute, which I believe the defendant referred to it as. Where a directory statute is violated, a penalty may be possible. That's the Illinois Supreme Court held in MI, which is high up in the briefs. But a violation of a directory statute is harmless where the defendant has not shown prejudice. Okay, so that's where I'm leading up to. And so what prejudice, what would the defendant have to show for prejudice in this kind of a situation? Well, one thing I want to say about prejudice is that in Wacholz, the court held, and this was a case involving noncompliance with the companion statute, section 30 of the statute that requires that the tapes be held for 90 days. There wasn't compliance with that. The court in Wacholz held that that statute, the companion statute, was directory. And that because the defendant couldn't prove prejudice, any violation was harmless. Well, that's, I mean, I'm just trying to figure out what a defendant would have to show. I mean, let's say you have a police report from the officer who says, you know, he failed the one-leg stand test, he failed the heel-to-toe test, et cetera, et cetera. And then let's say in some motion hearing the defendant gets on the stand and says, I performed those perfectly. So you have a he said, he said type situation. Is that, and then no tape, is that enough prejudice? I don't know, Your Honor. I would only say that. Well, let's say the defendant says that and he has another witness who also says the officer's being untruthful. Would two witnesses be enough prejudice to show to have a sanction to exclude the evidence? The tape? I don't know, Your Honor. Or what should have been on the tape? I would only say that in this case the defendant didn't allege the existence of prejudice in his filings in the circuit court. Past that, I can't say. Okay. Also the, I wanted to add that the defendant said that the court, that the Illinois Supreme Court interpreted the statute, the Section 30, as mandatory in CLADIS. But the mandatory directory dichotomy was not at issue in CLADIS. That issue was at issue in Boris, in which the developer held that the statute was directory. Thank you, counsel. We appreciate the brief and arduous of all counsel. We'll take the case under advisement. The court will be in short recess. All rise.